# Exhibit A

State of Illinois )
        ) S.S.
County of St. Clair )

Case Number ___2018-L-0572___

Amount Claimed ___excess of $50,000.00___

| | |
|---|---|
| Colleen Cadigan, as Executrix of the Estate of Elizabeth Driscoll, Deceased, | Johnson & Johnson, et al. |
| Plaintiff(s) | Defendant(s) |

VS

Classification Prefix _____ Code _____ Nature of Action _____ Code _____

**TO THE SHERIFF: SERVE THIS DEFENDANT AT:**

Pltf. Atty. John J. Driscoll  Code 62764
Address 211 N. Broadway, 40th Floor
City St. Louis  Phone 932-3232
Add. Pltf. Atty. CJ Baricevic  Code _____

NAME Johnson & Johnson Consumer Co., Inc.

CT Corporation System

ADDRESS 208 South Lasalle Street

Suite 814

CITY & STATE  Chicago, IL 60604

**SUMMONS COPY**

To the above named defendant(s)......:

**A.** You are hereby summoned and required to appear before this court at (court location) _____ at _____ M. On _____ 20____ to answer the complaint in this case, a copy of which is hereto attached. If you fail to do so, a judgment by default may be taken against you for the relief asked in the complaint.

[✓] **B.** You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, in the office of the clerk of this court within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, judgment of decree by default may be taken against you for the relief prayed in the complaint.

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.

**TO THE OFFICER:**
This summons must be returned by the officer or other person to whom it was given for service, with indorsement thereon of service and fees if any, immediately after service. In the event that paragraph A of this summons is applicable this summons may not be served less than three days before the day of appearance. If service cannot be made, this summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date.

WITNESS, _____ 20____

**SEAL**

_____
Clerk of Court

BY DEPUTY: _____

DATE OF SERVICE: __9/6____ 20_18_
(To be inserted by officer on copy left with defendant or other person)

I certify that I served this summons on defendants as follows:

(a) – (Individual defendants – personal):
By leaving a copy of the summons and a copy of the complaint with each individual defendant personally as follows:

Name of defendant                                    Date of service

_____                    _____

_____                    _____

_____                    _____

_____                    _____

(b) - (Individual defendants - abode):
By leaving a copy of the summons and a copy of the complaint at the usual place of abode of each individual defendant with a person of his family, of the age of 13 years or upwards, informing that person of the contents of the summons, and also by sending a copy of the summons and of the complaint in a sealed envelope with postage fully prepaid, addressed to each individual defendant at his usual place of abode, as follows:

| Name of defendant | Person with whom left | Date of service | Date of mailing |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

(c) - Corporation defendants):
By leaving a copy of the summons and a copy of the complaint with the registered agent office, or agent of each defendant corporation as follows:

| Defendant corporation | Registered agent, officer or agent | Date of service |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

(d) - (Other service):

| SHERIFF'S FEES |
|---|
| Service and return _____ $ |
| Miles _____ . . . . . . . . . .$_____ |
| Total . . . . . . . . . . . . . . . . . . . . . . ,$_____ |
| |
| _____ |
| Sheriff of ¹_____ County |

_____, Sheriff of _____County

_____, Deputy

Electronically Filed
Kahalah A. Clay
Circuit Clerk
CARMEN GLENN
18L0572
St. Clair County
8/29/2018 11:38 AM
2014312

## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS

| | | |
|---|---|---|
| COLLEEN CADAGIN, | ) | |
| as Executrix of the Estate of | ) | |
| ELIZABETH DRISCOLL, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 2018-L- 0572 _____ |
| | ) | |
| JOHNSON & JOHNSON, | ) | |
| | ) | |
| **Serve**: | ) | |
| Steven M. Rosenberg | ) | |
| Registered Agent | ) | |
| One Johnson & Johnson Plaza | ) | |
| New Brunswick, New Jersey 08933 | ) | |
| | ) | |
| JOHNSON & JOHNSON CONSUMER | ) | |
| COMPANIES, INC., | ) | |
| | ) | |
| **Serve**: | ) | |
| C T Corporation System | ) | |
| 208 South Lasalle Street | ) | |
| Suite 814 | ) | |
| Chicago, Illinois 60604 | ) | |
| | ) | |
| IMERYS TALC AMERICA, INC. f/k/a | ) | |
| LUZENAC AMERICA, INC. | ) | |
| | ) | |
| **Serve**: | ) | |
| CT Corporation System | ) | |
| 17 G W Tatro Drive | ) | |
| Jeffersonville, Vermont 05464 | ) | |
| | ) | |
| | ) | |

1

| | |
|---|---|
| WALGREEN CO. | ) |
| | ) |
| **Serve**: | ) |
| Illinois Corporation Service C | ) |
| 801 Adlai Stevenson Drive | ) |
| Springfield, Illinois 62703 | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased (hereinafter "Plaintiff" or "Elizabeth"), and for her causes of action against Defendants, Johnson & Johnson ("J&J"), Johnson & Johnson Consumer Companies, Inc. ("JJCC"), Imerys Talc America, Inc. f/k/a Luzenac America, Inc. ("ITA"), and Walgreen Co. ("Walgreen") (hereinafter at times collectively referred to as "Defendants" or "the Defendants"), states as follows:

## INTRODUCTION

1.    Plaintiff brings these claims and causes of action against Defendants and/or their corporate predecessors arising out of their negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of products known as "Johnson & Johnson Baby Powder" and "Shower to Shower" (hereinafter referred to as "the Products").

2.    The Plaintiff seeks recovery on behalf of the Estate of Elizabeth Driscoll for her personal injuries and damages suffered and experienced before her death, and for her wrongful death, all as a direct and proximate result of such wrongful conduct by the Defendants, the unreasonably dangerous and defective nature of talcum powder, which is a major constituent ingredient in the Products, and the attendant effects of developing ovarian cancer.

2

## PARTIES, JURISDICTION AND VENUE

3.      At all times relevant to the Complaint, Elizabeth was a resident of the State of Illinois, residing in Collinsville, Belleville, and thereafter Smithton, St. Clair County, Illinois, for the last 42 or so years of her life.  Elizabeth regularly and habitually purchased, among other sundry items, the Products from two Walgreen locations in Belleville:  5890 North Belt West; and 2532 North Illinois Street.  Elizabeth regularly and habitually throughout her adult life used the Products on, among other areas of her person, her perineal area.  On or about February 25, 2015, Elizabeth was diagnosed with ovarian cancer.  She died of ovarian cancer on September 4, 2016.

4.      Plaintiff, Colleen Cadagin, brings these claims and causes of action on behalf of the Estate of Elizabeth Driscoll pursuant to the Illinois Wrongful Death Act, 735 ILCS 180/1 et seq. (West 2008) and the Illinois Survival Act, 735 ILCS 5/27-6 (West 2008).

5.      Defendants, J&J and JJCC, are New Jersey corporations with the principal offices for the transaction of their businesses in New Brunswick, New Jersey.  At all times relevant to this lawsuit, J&J and JJCC were engaged in the business of manufacturing, marketing, testing, promoting, distributing and/or selling the Products, and regularly transacted, solicited, and conducted business in all of the United States, including specifically the State of Illinois and St. Clair County, Illinois.

6.      Similarly, and at all times relevant to this lawsuit, J&J and JJCC placed the Products into the stream of commerce with the knowledge and intent that they be sold in St. Clair County, State of Illinois, and be used by St. Clair County and Illinois citizens and residents.

3

7.      At all times relevant to this lawsuit, JJCC has been a wholly-owned subsidiary of J&J, under the complete dominion of and control of J&J, and the agent and alter ego of J&J. Hereinafter, and unless otherwise indicated, J&J and JJCC shall be collectively referred to as the "J&J Defendants."

8.      Defendant, ITA, is a Delaware corporation with its principal office for the transaction of its business in the State of California.  At all times relevant to this lawsuit, ITA has been in the business of mining and distributing talcum powder for use in talcum powder-based products, including the Products.

9.      At all times relevant to this lawsuit, ITA is the successor or continuation of Luzenac America, Inc., and is legally responsible for all liabilities incurred when it was known as Luzenac America, Inc.  Hereinafter, all allegations regarding actions taken by ITA shall be deemed to include any and all actions taken while it was known as Luzenac America, Inc.

10.     Defendant, Walgreen, is an Illinois corporation with the principal office for the transaction of its business in the State of Illinois.  At all times relevant to this lawsuit, Walgreen has been engaged in the selling, distributing, and marketing of the Products.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

11.     Talc is a magnesium trisilicate and is mined from the earth.  Talc is an inorganic mineral.  ITA mined the talc contained in the Products.

12.     Talc is the overwhelming main substance in talcum powders.   The J&J Defendants manufactured the Products.

13.     At all times relevant to this lawsuit, a feasible alternative to the Products has existed in the form of cornstarch powders.

4

14. Cornstarch is an organic carbohydrate that is quickly broken down by the body with no known health effects.

15. Cornstarch powders have been sold and marketed for the same uses with similar and/or nearly the same effectiveness as the Products.

16. ITA has continually advertised and marketed talc as safe for human use. ITA supplies customers with Material Safety Data Sheets ("MSDS") for talc. The material safety data sheets are supposed to convey adequate health and warning information to its customers.

17. Historically, "Johnson's Baby Powder" has been a symbol of freshness, cleanliness, and purity. During all times relevant to this lawsuit, the J&J Defendants advertised and marketed the Products as the beacon of "freshness" and "comfort", eliminating friction on the skin, absorbing "excess wetness", and helping to keep skin feeling dry and comfortable, and "clinically proven gentle and mild."

18. Historically, the J&J Defendants compelled women through advertisements to dust themselves with this product to mask odors.

19. Historically, the labeling of the bottle of "Johnson's Baby Powder" specifically targets women by stating: "For you, use every day to help feel soft, fresh, and comfortable."

20. Historically, the J&J Defendants advertised and marketed the product "Shower to Shower" as safe for use by women as evidenced by its slogan: "A sprinkle a day keeps odor away...", and through advertisements such as: "Your body perspires in more places than just under your arms. Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day." And: "SHOWER to SHOWER can be used all over your body."

21.    Elizabeth used the Products to dust her perineum for feminine hygiene purposes. This was an intended and foreseeable use of the Products based upon the advertising, marketing, and labeling of the Products.

22.    In 1971, the first study was conducted that suggested an association between talc and ovarian cancer. This study was conducted by Dr. W.J. Henderson and others in Cardiff, Wales.

23.    In 1982, the first epidemiological study was performed on talc powder use in the female genitalia area. This study was conducted by Dr. Daniel Cramer and others. This study found a 92% increased risk in ovarian cancer with women who reported genital talc use. Shortly after this study was published, Dr. Bruce Semple of J&J came and visited Dr. Cramer about his study. Dr. Cramer advised Dr. Semple that J&J should place a warning on its talcum powders about the ovarian cancer risks so that women can make an informed decision about their health.

24.    Since 1982, there have been approximately 22 additional epidemiological studies providing data regarding the association of talc and ovarian cancer. Nearly all of these studies have reported an increased risk for ovarian cancer associated with genital talc use in women.

25.    In 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestiform talc and found clear evidence of carcinogenic activity. Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.

26.    In response to the United States National Toxicology Program's study, the "Cosmetic Toiletry and Fragrance Association" ("CTFA") formed the "Talc Interested Party Task Force" ("TIPTF"). The J&J Defendants and ITA were members of the CTFA and were the primary actors and contributors of the TIPTF. The stated purpose of the TIPTF was to pool

financial resources of these companies in an effort to collectively defend talc use at all costs and to prevent regulation of any type over this industry. The TIPTF hired scientists to perform biased research regarding the safety of talc, members of the TIPTF edited scientific reports of the scientists hired by this group prior the submission of these scientific reports to governmental agencies, members of the TIPTF knowingly released false information about the safety of talc to the consuming public, and used political and economic influence on regulatory bodies regarding talc. All of these activities have been well coordinated and planned by these companies and organizations over the past four decades in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc relative to ovarian cancer.

27. On November 10, 1994, the Cancer Prevention Coalition mailed a letter to then J&J C.E.O, Ralph Larson, informing his company that studies going as far back as the 1960s "...show...conclusively that the frequent use of talcum powder in the genital area pose[s] a serious health risk of ovarian cancer." The letter cited a recent study by Dr. Bernard Harlow from Harvard Medical School confirming this fact and quoted a portion of the study where Dr. Harlow and his colleagues discouraged the use of talc in the female genital area. The letter further stated that 14,000 women per year die from ovarian cancer and that this type of cancer is very difficult to detect and has a low survival rate. The letter concluded by requesting that J&J withdraw talc products from the market because of the alternative of cornstarch powders, or at a minimum, place warning information on its talc-based body powders about the ovarian cancer risk they pose.

28. In 1996, the condom industry stopped dusting condoms with talc due to the health concerns of ovarian cancer.

29.    In February of 2006, the International Association for the Research of Cancer ("IARC"), a part of the World Health Organization, published a paper whereby they classified perineal use of talc-based body powder as a "Group 2B" human carcinogen. IARC, which is universally accepted as the international authority on cancer issues, concluded that studies from around the world consistently found an increased risk of ovarian cancer in women from perineal use of talc. IARC found that between 16-52% of women in the world were using talc to dust their perineum and found an increased risk of ovarian cancer in women talc users ranging from 30-60%. IARC concluded with this "Evaluation": "There is limited evidence in humans for the carcinogenicity of perineal use of talc-based body powder." By definition, a "limited evidence of carcinogenicity" means "a positive association has been observed between exposure to the agent and cancer for which a causal interpretation is considered by the Working Group to be credible, but chance, bias or confounding could not be ruled out with reasonable confidence."

30.    In approximately 2006, the Canadian government under The Hazardous Products Act and associated Controlled Products Regulations classified talc as a "D2A", or a "very toxic", "cancer causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A".

31.    In 2006, ITA began placing a warning on its Material Safety Data Sheets ("MSDS") it provided to the J&J Defendants regarding the talc it sold to them to be used in the Products. These MSDSs not only provided the warning information about the IARC classification but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's "D2A" classification of talc as well.

32.    The Defendants had a duty to know and warn about the hazards associated with the use of the Products.

33.     The Defendants, and all of them, failed to inform customers and end users of the Products of a known catastrophic health hazard associated with the use of the Products.

34.     In addition, the Defendants procured and disseminated false, misleading, and biased information regarding the safety of the Products to the public and used influence over governmental and regulatory bodies regarding talc.

35.     As a direct and proximate result of the Defendants' calculated and reprehensible conduct, Elizabeth was injured and suffered damages, namely ovarian cancer, which required surgeries and treatments, and which ultimately caused her death on September 4, 2016.

## COUNT I – SURVIVAL ACT--STRICT LIABILITY FOR FAILURE TO WARN
### (All Defendants)

36.     Plaintiff incorporates by reference as if fully set forth herein the General Allegations Applicable to All Counts of this Complaint.

37.     At all times relevant to this lawsuit, ITA mined and sold talc to the J&J Defendants, knowing that the J&J Defendants were then packaging and selling that talc to consumers as the Products, and further knew that consumers of the Products were using them to powder their perineal regions, among other uses.

38.     At all times relevant to this lawsuit, ITA knew and/or should have known of the unreasonably dangerous and carcinogenic nature of the talc it was selling to the J&J Defendants, especially when used in a woman's perineal region, and it knew or should have known that the J&J Defendants were not warning their consumers of this danger.

39.     At all times relevant to this lawsuit, the J&J Defendants were manufacturing, marketing, testing, promoting, selling and/or distributing the Products in the regular course of business.

9

40. At all times relevant to this lawsuit, Walgreen was promoting, selling, and/or distributing the Products in the regular course of its retail business.

41. At all times relevant to this lawsuit, Elizabeth used the Products to powder her perineal area, which is a reasonably foreseeable use.

42. At all times relevant to this lawsuit, all Defendants in this action knew or should have known that the use of talcum powder-based products in the perineal area significantly increased the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s.

43. At all times relevant to this lawsuit, including the time of sale and consumption, the Products, when put to the aforementioned reasonably foreseeable use, were in an unreasonably dangerous and defective condition because they failed to contain adequate and proper warnings and/or instructions regarding the increased risk of ovarian cancer associated with the use of the Products by women to powder their perineal area. Defendants themselves failed to properly and adequately warn and instruct Elizabeth as to the risks and benefits of the Products, given her need for this information.

44. Had Elizabeth received a warning that the use of the Products would have significantly increased her risk of ovarian cancer, she would not have used them. As a direct and proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the Products, Elizabeth developed ovarian cancer and ultimately died as a direct result thereof on September 4, 2016.

45. The Defendants' Products were defective because they failed to contain warnings and/or instructions, and breached express warranties and/or failed to conform to express factual representations upon which Elizabeth justifiably relied in electing to use the Products. The defect or defects made the Products unreasonably dangerous to those persons,

such as Elizabeth, who could reasonably be expected to use and rely upon such Products. As a result, the defect or defects were a producing cause of Elizabeth's ovarian cancer and death.

46.    The Defendants' Products failed to contain, and continue to this day not to contain, adequate warnings and/or instructions regarding the increased risk of ovarian cancer with the use of their Products by women. The Defendants continue to market, advertise, and expressly represent to the general public that it is safe for women to use the Products regardless of application. These Defendants continue with these marketing and advertising campaigns despite having scientific knowledge that dates back to the 1960s that the Products increase the risk of ovarian cancer in women when used in the perineal area.

47.    The development of ovarian cancer by Elizabeth was the direct and proximate result of the unreasonably dangerous and defective condition of the Products at the time of sale and consumption, including their lack of warnings.

48.    Prior to her dying as a direct and proximate result of her ovarian cancer, Elizabeth was caused to endure severe pain and suffering, extreme mental anguish, disability, disfigurement, impairment, loss of a normal life, loss of care, loss of comfort, and to incur substantial medical expenses.

WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against the Defendants, jointly and severally, in an amount above the jurisdictional minimum to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

## COUNT II---SURVIVAL ACT--NEGLIGENCE
### (ITA)

11

49.    Plaintiff incorporates by reference as if fully set forth herein the General Allegations Applicable to All Counts and Count I of this Complaint.

50.    At all times relevant to this lawsuit, ITA had a duty to exercise reasonable care to consumers, including Elizabeth, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the Products.

51.    At all times relevant to this lawsuit, ITA mined and sold talc to the J&J Defendants, which it knew or should have known was then being packaged and sold to consumers as the Products by the J&J Defendants. Further, ITA knew or should have known that consumers of the Products were using them to powder their perineal regions.

52.    At all times relevant to this lawsuit, ITA knew or should have known that the use of talcum powder-based products in the perineal area significantly increased the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s.

53.    At all times relevant to this lawsuit, ITA knew or should have known that the J&J Defendants were not providing warnings to consumers of the Products of the risk of ovarian cancer posed by talc contained therein.

54.    At all times relevant to this lawsuit, ITA was negligent in providing talc to the J&J Defendants, when it knew or should have known that the talc would be used in the Products, without adequately taking steps to ensure that ultimate consumers of the Products, including Elizabeth, received the information that ITA possessed on the carcinogenic properties of talc, including its risk of causing ovarian cancer.

55.    As a direct and proximate result of ITA's negligence, Elizabeth purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer and thus her death on September 4, 2016.

12

56.    Prior to her dying as a direct and proximate result of her ovarian cancer, Elizabeth was caused to endure severe pain and suffering, extreme mental anguish, disability, disfigurement, impairment, loss of a normal life, loss of care, loss of comfort, and to incur substantial medical expenses.

WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against ITA in an amount above the jurisdictional minimum to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

## COUNT III--SURVIVAL ACT--NEGLIGENCE
### (J&J Defendants)

57.    Plaintiff incorporates by reference as if fully set forth herein the General Allegations Applicable to All Counts, Count I, and Count II of this Complaint.

58.    At all times relevant to this lawsuit, the J&J Defendants knew or should have known that the Products were unreasonably dangerous and defective when put to their reasonably anticipated use.

59.    The J&J Defendants were negligent in marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing the Products in one or more of the following respects:

a. In failing to warn Elizabeth of the hazards associated with the use of the Products;

b. In failing to properly test the Products to determine the adequacy and effectiveness or safety measures, if any, prior to releasing the Products for consumer use;

c. In failing to properly test their products to determine the increased risk of ovarian cancer during normal and/or intended use of the Products;

13

d.  In failing to inform ultimate users, such as Elizabeth, as to the safe and proper methods of handling and using the Products;

e.  In failing to remove the Products from the market when the Defendants knew, or should have known, that the Products were defective;

f.  In failing to instruct the ultimate users, including Elizabeth, as to the methods for preventing or reducing the type of exposure to the Products which caused increased risk of ovarian cancer;

g.  In failing to inform the public in general, and Elizabeth in particular, of the known dangers of using the Products for dusting the perineum;

h.  In marketing and labeling the Products as safe for all uses despite knowledge to the contrary.

i.  In failing to act like a reasonably prudent company under similar circumstances.

60.  As a direct and proximate result of the J&J Defendants' negligence, Elizabeth purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer and thus her death on September 4, 2016.

61.  Prior to her dying as a direct and proximate result of her ovarian cancer, Elizabeth was caused to endure severe pain and suffering, extreme mental anguish, disability, disfigurement, impairment, loss of a normal life, loss of care, loss of comfort, and to incur substantial medical expenses.

WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against the J&J Defendants in an amount above the jurisdictional minimum to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

14

## COUNT IV---SURVIVAL ACT--NEGLIGENCE
### (Walgreen)

62.    Plaintiff incorporates by reference as if fully set forth herein the General Allegations Applicable to All Counts, Count I, Count II, and Count III of this Complaint.

63.    At all times relevant to this lawsuit, Walgreen knew or should have known that the Products were unreasonably dangerous and defective when put to their reasonably anticipated use.

64.    Walgreen was negligent in marketing, supplying, selling and/or distributing the Products in one or more of the following respects:

a.  In failing to warn Elizabeth of the hazards associated with the use of the Products;

b.  In failing to properly test the Products to determine the adequacy and effectiveness or safety measures, if any, prior to releasing the Products for consumer use;

c.  In failing to properly test the Products to determine the increased risk of ovarian cancer during normal and/or intended use of them;

d.  In failing to inform ultimate users, such as Elizabeth, as to the safe and proper methods of handling and using the Products;

e.  In failing to remove the Products from the market when it knew or should have known that the Products were defective;

f.  In failing to instruct the ultimate users, including Elizabeth, as to the methods for preventing or reducing the type of exposure to the Products which caused increased risk of ovarian cancer;

g.  In failing to inform the public in general, and Elizabeth in particular, of the known dangers of using the Products for dusting the perineum;

15

h.  In marketing and labeling the Products as safe for all uses despite knowledge to the contrary.

i.  In failing to act like a reasonably prudent company under similar circumstances.

65.  As a direct and proximate result of Walgreen's negligence, Elizabeth purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer and thus her death on September 4, 2016.

66.  Prior to her dying as a direct and proximate result of her ovarian cancer, Elizabeth was caused to endure severe pain and suffering, extreme mental anguish, disability, disfigurement, impairment, loss of a normal life, loss of care, loss of comfort, and to incur substantial medical expenses.

WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against Walgreen in an amount above the jurisdictional minimum to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

## COUNT V--SURVIVAL ACT--BREACH OF EXPRESS WARRANTY
### (J& J Defendants)

67.  Plaintiff incorporates by reference as if fully set forth herein the General Allegations Applicable to All Counts, Count I, Count II, Count III and Count IV of this Complaint.

68.  The J&J Defendants expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that the Products were safe and effective for reasonably anticipated uses, including use by women in the perineal area.

16

69.    The Products did not conform to these express representations because they cause serious injury when used by women in the perineal area in the form of ovarian cancer.

70.    As a direct and proximate result of the J&J Defendants' breach of their express warranties, Elizabeth purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer and thus her death on September 4, 2016.

71.    Prior to her dying as a direct and proximate result of her ovarian cancer, Elizabeth was caused to endure severe pain and suffering, extreme mental anguish, disability, disfigurement, impairment, loss of a normal life, loss of care, loss of comfort, and to incur substantial medical expenses.

WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against the J&J Defendants in an amount above the jurisdictional minimum to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

## COUNT VI--SURVIVAL ACT--BREACH OF IMPLIED WARRANTIES
### (J&J Defendants and Walgreen)

72.    Plaintiffs incorporate by reference as if fully set forth herein the General Allegations Applicable to All Counts, Count I, Count II, Count III, Count IV, and Count V of this Complaint.

73.    At the time the Defendants manufactured, marketed, labeled, promoted, distributed and/or sold the Products, the J&J Defendants and Walgreen knew of the uses for which the Products were intended, including use by women in the perineal area, and impliedly warranted the Products to be of merchantable quality and safe for such use.

17

74.    The J&J Defendants and Walgreen breached their implied warranties of the Products sold to Elizabeth because they were not fit for their common, ordinary and intended uses, including use by women in the perineal area.

75.    As a direct and proximate result of the J&J Defendants' and Walgreen's breach of their implied warranties, Elizabeth purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer and thus her death on September 4, 2016.

76.    Prior to her dying as a direct and proximate result of her ovarian cancer, Elizabeth was caused to endure severe pain and suffering, extreme mental anguish, disability, disfigurement, impairment, loss of a normal life, loss of care, loss of comfort, and to incur substantial medical expenses.

WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against the J&J Defendants and Walgreen in an amount above the jurisdictional minimum to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

## COUNT VII--SURVIVAL ACT--CIVIL CONSPIRACY
### (J&J Defendants and ITA)

77.    Plaintiff incorporates by reference as if fully set forth herein the General Allegations Applicable to All Counts, Count I, Count II, Count III, Count IV, Count V, and Count VI of this Complaint.

78.    Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause Elizabeth's injuries, her ovarian cancer, and her ultimate death by exposing her to the harmful and dangerous Products.

18

Defendants further knowingly agreed, contrived, confederated and conspired to deprive Elizabeth of the opportunity of informed free choice as to whether to use the Products or to expose her to the dangers of the Products' use. Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to the Products.

79. In furtherance of said conspiracies, Defendants performed the following overt acts:

a. For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which clearly indicated that use of their by women resulting from ordinary and foreseeable use of the Products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

b. Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully and maliciously:

i. Withheld, concealed and suppressed said medical information regarding the increased risk of ovarian cancer from Elizabeth (as set forth in this Complaint); in addition, on July 27, 2005, Defendants, as part of the TIPTF, corresponded and agreed to edit and delete portions of scientific papers being submitted on their behalf to the United States Toxicology Program in an attempt to prevent talc from being classified as a carcinogen;

19

ii.  The Defendants, through the TIPTF, instituted a "defense strategy" to defend talc at all costs. Admittedly, the Defendants, through the TIPTF, used their influence over the NTP Subcommittee, and the threat of litigation against the NTP, to prevent the NTP from classifying talc as a carcinogen on its 10th RoC. According to the Defendants, ". . . we believe these strategies paid-off";

iii.  Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of ovarian cancer which Defendants knew were incorrect, incomplete, outdated, and misleading. Specifically, the Defendants through the TIPTF collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994. In a letter dated September 17, 1997, the Defendants were criticized by their own toxicologist consultant for releasing this false information to the public, yet nothing was done by the Defendants to correct or redact this public release of knowingly false information.

80.  By these false and fraudulent representations, omissions, and concealments, Defendants intended to induce Elizabeth to rely upon said false and fraudulent representations, omissions and concealments, and to continue to expose herself to the dangers inherent in the use of and exposure to the Products.

81. Elizabeth reasonably and in good faith relied upon the aforementioned fraudulent representations, omissions, and concealments made by Defendants regarding the nature and use of the Products.

82. As a direct and proximate result of the Defendants' fraudulent civil conspiracy, Elizabeth purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer and thus her death of September 4, 2016.

83. Prior to her dying as a direct and proximate result of her ovarian cancer, Elizabeth was caused to endure severe pain and suffering, extreme mental anguish, disability, disfigurement, impairment, loss of a normal life, loss of care, loss of comfort, and to incur substantial medical expenses.

WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against the J&J Defendants and ITA in an amount above the jurisdictional minimum to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

## COUNT VIII--SURVIVAL ACT--NEGLIGENT MISREPRESENTATION
### (J&J Defendants and ITA)

84. Plaintiff incorporates by reference as if fully set forth herein the General Allegations Applicable to All Counts, Count I, Count II, Count III, Count IV, Count V, Count VI, and Count VII of this Complaint.

85. Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, and to Elizabeth and the public, that the Products had been tested and found to be safe and effective for use in the perineal area. The representations made by Defendants, in fact, were false.

21

86.    Defendants failed to exercise ordinary care in the representations concerning the Products while they were involved in their manufacture, sale, testing, quality assurance, quality control, supplying, distribution and sale in interstate commerce, because Defendants negligently misrepresented the Products' high risk of unreasonable, dangerous, and adverse side effects.

87.    Defendants breached their duty in expressly and impliedly representing that the Products had no serious side effects, when in fact they knew full well that they did.

88.    As a direct and proximate result of the Defendants' misrepresentations, Elizabeth purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer and thus her death on September 4, 2016.

89.    Prior to her dying as a direct and proximate result of her ovarian cancer, Elizabeth was caused to endure severe pain and suffering, extreme mental anguish, disability, disfigurement, impairment, loss of a normal life, loss of care, loss of comfort, and to incur substantial medical expenses.

WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against the J&J Defendants and ITA in an amount above the jurisdictional minimum to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

## COUNT IX – WRONGFUL DEATH ACT --STRICT LIABILITY FOR FAILURE TO WARN
### (All Defendants)

90.    Plaintiff incorporates by reference as if fully set forth herein the General Allegations Applicable to All Counts of this Complaint.

22

91.    At all times relevant to this lawsuit, ITA mined and sold talc to the J&J Defendants, which it knew that the J&J Defendants were then packaging and selling to consumers as the Products, and further knew that consumers of the Products were using them to powder their perineal regions, among other uses.

92.    At all times relevant to this lawsuit, ITA knew and/or should have known of the unreasonably dangerous and carcinogenic nature of the talc it was selling to the J&J Defendants, especially when used in a woman's perineal regions, and it knew or should have known that the J&J Defendants were not warning their consumers of this danger.

93.    At all times relevant to this lawsuit, the J&J Defendants were manufacturing, marketing, testing, promoting, selling and/or distributing the Products in the regular course of business.

94.    At all times relevant to this lawsuit, Walgreen was promoting, selling, and/or distributing the Products in the regular course of its retail business.

95.    At all times relevant to this lawsuit, Plaintiffs used the Products to powder their perineal area, which is a reasonably foreseeable use.

96.    At all times relevant to this lawsuit, all Defendants in this action knew or should have known that the use of talcum powder-based products in the perineal area significantly increased the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s.

97.    At all times relevant to this lawsuit, including the time of sale and consumption, the Products, when put to the aforementioned reasonably foreseeable use, were in an unreasonably dangerous and defective condition because they failed to contain adequate and proper warnings and/or instructions regarding the increased risk of ovarian cancer associated with the use of the Products by women to powder their perineal area. Defendants themselves

23

failed to properly and adequately warn and instruct Elizabeth as to the risks and benefits of the Products, given her need for this information.

98. Had Elizabeth received a warning that the use of the Products would have significantly increased her risk of ovarian cancer, she would not have used them.

99. As a direct and proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the Products, Elizabeth developed ovarian cancer and ultimately died as a direct result thereof on September 4, 2016.

100. The Defendants' Products were defective because they failed to contain warnings and/or instructions, and breached express warranties and/or failed to conform to express factual representations upon which Elizabeth justifiably relied in electing to use the Products. The defect or defects made the Products unreasonably dangerous to those persons, such as Elizabeth, who could reasonably be expected to use and rely upon such Products. As a result, the defect or defects were a producing cause of Elizabeth's ovarian cancer and death.

101. The Defendants' Products failed to contain, and continue to this day not to contain, adequate warnings and/or instructions regarding the increased risk of ovarian cancer with the use of their Products by women. The Defendants continue to market, advertise, and expressly represent to the general public that it is safe for women to use their product regardless of application. These Defendants continue with these marketing and advertising campaigns despite having scientific knowledge that dates back to the 1960s that their Products increase the risk of ovarian cancer in women when used in the perineal area.

102. The development of ovarian cancer by Elizabeth was the direct and proximate result of the unreasonably dangerous and defective condition of the Products at the time of sale and consumption, including their lack of warnings.

24

103.    As a direct and proximate result of the wrongful death of Elizabeth, her heirs at law have sustained substantial pecuniary losses, including but not limited to services and society, and have experienced a considerable deprivation of love, companionship and affection, and further experienced considerable grief, sorrow, mental suffering and anguish.

104.    WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against the Defendants, jointly and severally, in an amount above the jurisdictional minimum to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

## COUNT X--- WRONGFUL DEATH ACT--NEGLIGENCE
## (ITA)

105.    Plaintiff incorporates by reference as if fully set forth herein the General Allegations Applicable to All Counts and Count IX of this Complaint.

106.    At all times relevant to this lawsuit, ITA had a duty to exercise reasonable care to consumers, including Elizabeth, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the Products.

107.    At all times relevant to this lawsuit, ITA mined and sold talc to the J&J Defendants, which it knew and/or should have known was then being packaged and sold to consumers as the Products by the J&J Defendants. Further, ITA knew and/or should have known that consumers of the Products were using them to powder their perineal regions.

108.    At all times relevant to this lawsuit, ITA knew or should have known that the use of talcum powder-based products in the perineal area significantly increased the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s.

25

109.    At all times relevant to this lawsuit, ITA knew or should have known that the J&J Defendants were not providing warnings to consumers of the Products of the risk of ovarian cancer posed by talc contained therein.

110.    At all times relevant to this lawsuit, ITA was negligent in providing talc to the J&J Defendants, when it knew or should have known, that the talc would be used in the Products, without adequately taking steps to ensure that ultimate consumers of the Products, including Elizabeth, received the information that ITA possessed on the carcinogenic properties of talc, including its risk of causing ovarian cancer.

111.    As a direct and proximate result of ITA's negligence, Elizabeth purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer and thus her death on September 4, 2016.

112.    As a direct and proximate result of the wrongful death of Elizabeth, her heirs at law have sustained substantial pecuniary losses, including but not limited to services and society, and have experienced a considerable deprivation of love, companionship and affection, and further experienced considerable grief, sorrow, mental suffering and anguish.

113.    WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against ITA in an amount above the jurisdictional minimum to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

## COUNT XI-- WRONGFUL DEATH ACT--NEGLIGENCE
### (J&J Defendants)

114.    Plaintiff incorporates by reference as if fully set forth herein the General Allegations Applicable to All Counts, Count IX, and Count X of this Complaint.

115.    At all times relevant to this lawsuit, the J&J Defendants knew or should have known that the Products were unreasonably dangerous and defective when put to their reasonably anticipated use.

116.    The J&J Defendants were negligent in marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing the Products in one or more of the following respects:

a.  In failing to warn Elizabeth of the hazards associated with the use of the Products;

b.  In failing to properly test their Products to determine the adequacy and effectiveness or safety measures, if any, prior to releasing the Products for consumer use;

c.  In failing to properly test their products to determine the increased risk of ovarian cancer during normal and/or intended use of the Products;

d.  In failing to inform ultimate users, such as Elizabeth, as to the safe and proper methods of handling and using the Products;

e.  In failing to remove the Products from the market when the Defendants knew, or should have known, that the Products were defective;

f.  In failing to instruct the ultimate users, including Elizabeth, as to the methods for preventing or reducing the type of exposure to the Products which caused increased risk of ovarian cancer;

g.  In failing to inform the public in general, and Elizabeth in particular, of the known dangers of using the Products for dusting the perineum;

h.  In marketing and labeling the Products as safe for all uses despite knowledge to the contrary.

i.  In failing to act like a reasonably prudent company under similar circumstances.

27

117.    As a direct and proximate result of the J&J Defendants' negligence, Elizabeth purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer and thus her death on September 4, 2016.

118.    As a direct and proximate result of the wrongful death of Elizabeth, her heirs at law have sustained substantial pecuniary losses, including but not limited to services and society, and have experienced a considerable deprivation of love, companionship and affection, and further experienced considerable grief, sorrow, mental suffering and anguish.

WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against the J&J Defendants in an amount above the jurisdictional minimum to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

## COUNT XII--- WRONGFUL DEATH ACT--NEGLIGENCE
### (Walgreen)

119.    Plaintiff incorporates by reference as if fully set forth herein the General Allegations Applicable to All Counts, Count IX, Count X, and Count XI of this Complaint.

120.    At all times relevant to this lawsuit, the Walgreen knew or should have known that the Products were unreasonably dangerous and defective when put to their reasonably anticipated use.

121.    Walgreen was negligent in marketing, supplying, selling and/or distributing the Products in one or more of the following respects:

a.  In failing to warn Elizabeth of the hazards associated with the use of the Products;

b.  In failing to properly test their Products to determine the adequacy and effectiveness or safety measures, if any, prior to releasing the Products for consumer use;

28

c.  In failing to properly test the Products to determine the increased risk of ovarian cancer during normal and/or intended use of them;

d.  In failing to inform ultimate users, such as Elizabeth, as to the safe and proper methods of handling and using the Products;

e.  In failing to remove the Products from the market when it knew or should have known that the Products were defective;

f.  In failing to instruct the ultimate users, including Elizabeth, as to the methods for preventing or reducing the type of exposure to the Products which caused increased risk of ovarian cancer;

g.  In failing to inform the public in general, and Elizabeth in particular, of the known dangers of using the Products for dusting the perineum;

h.  In marketing and labeling the Products as safe for all uses despite knowledge to the contrary.

i.  In failing to act like a reasonably prudent company under similar circumstances.

122.    As a direct and proximate result of Walgreen's negligence, Elizabeth purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer and thus her death on September 4, 2016.

123.    As a direct and proximate result of the wrongful death of Elizabeth, her heirs at law have sustained substantial pecuniary losses, including but not limited to services and society, and have experienced a considerable deprivation of love, companionship and affection, and further experienced considerable grief, sorrow, mental suffering and anguish.

WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against Walgreen in an amount above the jurisdictional minimum

29

to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

## COUNT XIII-- WRONGFUL DEATH ACT--BREACH OF EXPRESS WARRANTY
### (J& J Defendants)

124.    Plaintiff incorporates by reference as if fully set forth herein the General Allegations Applicable to All Counts, Count IX, Count X, Count XI, and Count XII of this Complaint.

125.    The J&J Defendants expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that the Products were safe and effective for reasonably anticipated uses, including use by women in the perineal area.

126.    The Products did not conform to these express representations because they cause serious injury when used by women in the perineal area in the form of ovarian cancer.

127.    As a direct and proximate result of the J&J Defendants' breach of their express warranties, Elizabeth purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer and thus her death on September 4, 2016.

128.    As a direct and proximate result of the wrongful death of Elizabeth, her heirs at law have sustained substantial pecuniary losses, including but not limited to services and society, and have experienced a considerable deprivation of love, companionship and affection, and further experienced considerable grief, sorrow, mental suffering and anguish.

WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against the J&J Defendants in an amount above the jurisdictional minimum to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

## COUNT XIV-- WRONGFUL DEATH ACT--BREACH OF IMPLIED WARRANTIES
### (J&J Defendants and Walgreen)

129.    Plaintiffs incorporate by reference as if fully set forth herein the General Allegations Applicable to All Counts, Count IX, Count X, Count XI, Count XII, and Count XIII of this Complaint.

130.    At the time the Defendants manufactured, marketed, labeled, promoted, distributed and/or sold the Products, the J&J Defendants and Walgreen knew of the uses for which the Products were intended, including use by women in the perineal area, and impliedly warranted the Products to be of merchantable quality and safe for such use.

131.    The J&J Defendants and Walgreen breached their implied warranties of the Products sold to Elizabeth because they were not fit for their common, ordinary and intended uses, including use by women in the perineal area.

132.    As a direct and proximate result of the J&J Defendants' and Walgreen's breach of their implied warranties, Elizabeth purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer and thus her death on September 4, 2016.

133.    As a direct and proximate result of the wrongful death of Elizabeth, her heirs at law have sustained substantial pecuniary losses, including but not limited to services and society, and have experienced a considerable deprivation of love, companionship and affection, and further experienced considerable grief, sorrow, mental suffering and anguish.

WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against the J&J Defendants and Walgreen in an amount above

31

the jurisdictional minimum to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

## COUNT XV-- WRONGFUL DEATH ACT--CIVIL CONSPIRACY
### (J&J Defendants and ITA)

134.    Plaintiff incorporates by reference as if fully set forth herein the General Allegations Applicable to All Counts, Count IX, Count X, Count XI, Count XII, Count XIII, and Count XIV of this Complaint.

135.    Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause Elizabeth's injuries, her ovarian cancer, and her ultimate death by exposing her to the harmful and dangerous Products. Defendants further knowingly agreed, contrived, confederated and conspired to deprive Elizabeth of the opportunity of informed free choice as to whether to use the Products or to expose her to the dangers of the Products' use. Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to the Products.

136.    In furtherance of said conspiracies, Defendants performed the following overt acts:

a.    For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which clearly indicated that use of their by women resulting from ordinary and foreseeable use of the Products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

32

b. Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully and maliciously:

  i. Withheld, concealed and suppressed said medical information regarding the increased risk of ovarian cancer from Elizabeth (as set forth in this Complaint); in addition, on July 27, 2005, Defendants, as part of the TIPTF, corresponded and agreed to edit and delete portions of scientific papers being submitted on their behalf to the United States Toxicology Program in an attempt to prevent talc from being classified as a carcinogen;

  ii. The Defendants, through the TIPTF, instituted a "defense strategy" to defend talc at all costs. Admittedly, the Defendants, through the TIPTF, used their influence over the NTP Subcommittee, and the threat of litigation against the NTP, to prevent the NTP from classifying talc as a carcinogen on its 10th RoC. According to the Defendants, ". . . we believe these strategies paid-off";

  iii. Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of ovarian cancer which Defendants knew were incorrect, incomplete, outdated, and misleading. Specifically, the Defendants through the TIPTF collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994. In a letter dated September 17,

1997, the Defendants were criticized by their own toxicologist consultant for releasing this false information to the public, yet nothing was done by the Defendants to correct or redact this public release of knowingly false information.

137.    By these false and fraudulent representations, omissions, and concealments, Defendants intended to induce Elizabeth to rely upon said false and fraudulent representations, omissions and concealments, and to continue to expose herself to the dangers inherent in the use of and exposure to the Products.

138.    Elizabeth reasonably and in good faith relied upon the aforementioned fraudulent representations, omissions, and concealments made by Defendants regarding the nature and use of the Products.

139.    As a direct and proximate result of the Defendants' fraudulent civil conspiracy, Elizabeth purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer and thus her death of September 4, 2016.

140.    As a direct and proximate result of the wrongful death of Elizabeth, her heirs at law have sustained substantial pecuniary losses, including but not limited to services and society, and have experienced a considerable deprivation of love, companionship and affection, and further experienced considerable grief, sorrow, mental suffering and anguish.

WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against the J&J Defendants and ITA in an amount above the jurisdictional minimum to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

34

## COUNT XVI-- WRONGFUL DEATH ACT--NEGLIGENT MISREPRESENTATION
### (J&J Defendants and ITA)

141.    Plaintiff incorporates by reference as if fully set forth herein the General Allegations Applicable to All Counts, Count IX, Count X, Count XI, Count XII, Count XIII, Count XIV, and Count XV of this Complaint.

142.    Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, and to Elizabeth and the public, that the Products had been tested and found to be safe and effective for use in the perineal area. The representations made by Defendants, in fact, were false.

143.    Defendants failed to exercise ordinary care in the representations concerning the Products while they were involved in their manufacture, sale, testing, quality assurance, quality control, supplying, distribution and sale in interstate commerce, because Defendants negligently misrepresented the Products' high risk of unreasonable, dangerous, and adverse side effects.

144.    Defendants breached their duty in expressly and impliedly representing that the Products had no serious side effects, when in fact they knew full well that they did.

145.    As a direct and proximate result of the Defendants' misrepresentations, Elizabeth purchased and used, as aforesaid, the Products that directly and proximately caused her to develop ovarian cancer and thus her death on September 4, 2016.

146.    As a direct and proximate result of the wrongful death of Elizabeth, her heirs at law have sustained substantial pecuniary losses, including but not limited to services and society, and have experienced a considerable deprivation of love, companionship and affection, and further experienced considerable grief, sorrow, mental suffering and anguish.

WHEREFORE, Plaintiff, Colleen Cadagin, as Executrix of the Estate of Elizabeth Driscoll, Deceased, prays for Judgment against the J&J Defendants and ITA in an amount above the jurisdictional minimum to submit an "L" case in this Court, for her Court costs herein, and for such other and further relief as this Court deems equitable and just.

Respectfully submitted,

BY:    /s/ JOHN J. DRISCOLL
JOHN J. DRISCOLL (#6276464)
THE DRISCOLL FIRM, P.C.
211 North Broadway, Suite 4050
St. Louis, Missouri 63102
Telephone No. (314) 932-3232
Fax No. (314) 932-3233
John@thedriscollfirm.com

36